**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

ARLINGTON G. GHEE,

                        Plaintiff,              Civil Action No. 11-03718(FLW)

    v.

                                     **OPINION**

MARTEN TRANSPORT, LTD., et. al.,

                      Defendants.

_____

**WOLFSON, United States District Judge:**

       After a jury trial on damages only, in which Plaintiff, Arlington G. Ghee ("Plaintiff"), was awarded $875,896.21, Defendants, Marten Transport, Ltd. and Randy J. Bee ("Defendants") renew their Motion for a Judgment as a Matter of Law pursuant to Fed. R. Civ. P. 50(b) and also seek a new trial under Fed. R. Civ. P. 59(a). Defendants also ask for remittitur of the portion of the jury's award for past lost wages between July 2011 and December 2011, and for future lost wages. For the reasons set forth below, Defendants' Motions are denied.

## BACKGROUND

       These Motions come before the Court after a week-long jury trial on damages only in which Plaintiff was awarded $875,896.21[1] for injuries he suffered as a result of a 2009 accident between two tractor trailers, one of which was operated by Plaintiff, and one of which was

_____

[1] The breakdown of the jury's award was $270,000 for pain & suffering; $137,400.21 for past medical expenses; $150,000 for future medical expenses; $108,496.00 for past lost wages; and $210,000 for future lost wages.

1

owned by Marten Transport and operated by Randy Bee. Defendants conceded liability before trial.

At trial, Plaintiff, who complains of back injuries, introduced the testimony of several witnesses, including his sister-in-law and his son, who discussed the impact of Plaintiff's injuries on their respective relationships with Plaintiff and how those injuries have impacted his relationships and interactions with others. Plaintiff testified that he did not believe he would be able to perform the duties associated with being a truck driver. Defendants twice objected to Plaintiff's testimony on this topic on the ground that such testimony was expert opinion, and Plaintiff was not an expert. Tr. Vol. 1, 51:12; Vol. 2, 9:5 The Court overruled both objections. Tr. Vol. 1, 51:13-14; Vol. 2, 9:6-7.

Plaintiff also introduced the testimony of an economic expert, Paul Gazaleh of the Chalfin Group, who calculated Plaintiff's past and future lost earnings[2] on the assumption that Plaintiff was unable to work in any capacity as a result of the accident.[3] Defendants had previously moved *in limine* to preclude such testimony on the grounds that this assumption was not supported by the evidence. I deferred ruling on this motion until after I had heard the testimony of the witnesses preceding Mr. Gazaleh. This testimony included the videotaped testimony of Dr. John Ratliff, an orthopaedic surgeon who operated on Plaintiff in June 2010 and continued treating him through July 2011, and the live testimony of Dr. Steven Berkowitz, an

---

[2] For the purposes of Mr. Gazaleh's calculations, the "past" began on the date Plaintiff stopped working at the end of June 2009, and continued through December 31, 2011. The "future" began on January 1, 2012. Tr. Vol. 3, 89:7 – 90:21.

[3] Mr. Gazaleh was not testifying as a vocational expert, so he did not actually find that Plaintiff could never work again, but relied on that assumption in making his calculations.

orthopaedic surgeon who examined Plaintiff in December 2011.[4] Both Dr. Berkowitz and Dr. Ratliff testified that Plaintiff's injuries were permanent, and Dr. Berkowitz testified that Plaintiff is unable to sit or stand for more than an hour at a time without experiencing pain. After hearing the fact and medical expert witnesses, and immediately prior to Mr. Gazaleh's testimony, I revisited the motion *in limin*e to exclude his testimony, and found that, while it was a close call, there was sufficient support in the record for Mr. Gazaleh's assumption that Plaintiff was unable to work as a result of the accident. Tr. Vol. 3, 70:18 – 74:1. I also explained that I would give, and indeed gave, specific and explicit instructions to the jury immediately prior to Mr. Gazaleh's testimony about the assumption being made by Mr. Gazaleh, and I explained that the jury need not accept this assumption. Tr. Vol. 3, 73:7 – 74:1, 84:20 – 86:15. These instructions are discussed and quoted *infra*, pp. 11-12. Mr. Gazaleh then testified that Plaintiff's past lost earnings, from June 30, 2009 to December 31, 2011, totaled $90,414, and Plaintiff's future lost earnings from January 1, 2012 through the date he would have likely retired, based upon the assumption that Plaintiff would no longer work, totaled $337,997.[5] Tr. Vol. 3, 90:9, 90:22. Defendants cross-examined Mr. Gazaleh, focusing heavily on the assumptions he made. At the conclusion of Plaintiff's case, Defendants moved for a directed verdict, which the Court denied.

Defendants then produced their own witnesses, including, most relevant to these Motions, Jodi Barach, a vocational rehabilitation expert. While Ms. Barach did not weigh in on the question of whether Plaintiff could return to work as a truck driver, she testified that, in her opinion, Plaintiff had acquired certain "transferable skills" from his time as a truck driver, and

---

[4] Defendants contend that the gap between when Dr. Ratliff last treated Plaintiff in July 2011 and when Dr. Berkowitz saw Plaintiff in December 2011 should preclude the jury's award of damages for the intervening time period.

[5] These amounts are the final projected amounts, after excluding taxes and other costs that Plaintiff would have incurred.

these skills qualified him for other jobs. Tr. Vol. 4, 15:4-6, 16:6-11. These jobs included lot attendant at a car dealership, a deliverer of car rentals, a courier, and a dispatcher. Tr. Vol. 4, 17:14 – 19:9. According to Ms. Barach, she took into account Plaintiff's limitations on "bending, lifting, and sitting tolerance" and that none of the occupations she listed would, according to the Department of Labor, require "prolonged sitting, [or] prolonged bending or lifting." Tr. Vol. 4, 46:10-19. Notably, however, Ms. Barach testified that she was not aware of the precise severity of the Plaintiff's limitations or that Plaintiff was in constant pain, though she claimed that such knowledge would not have affected her opinion. Tr. Vol. 4, 22:17 – 23:11, 24:7 – 12, 38:2 – 15. Defendants also produced an economic expert, Gary Barach, who testified that, based upon Ms. Barach's vocational assessment, Plaintiff's total economic damages would range from $0, if Plaintiff was able to obtain employment paying an equivalent salary to his prior employment, to a maximum of $85,272 using a weighted average methodology of the salaries of the other possible occupations. Tr. Vol. 4, 76:23 – 78:7.

Trial concluded on April 29 and the jury returned its verdict on April 30 in the amount of $875,896.21. Defendants timely filed the instant Motions on May 28, 2013, requesting a new trial under Fed. R. Civ. P. 50 and 59, or for remittitur of the jury's award pertaining to lost wages after July 2011.

## DISCUSSION

### I. Defendants' Motion for a New Trial Pursuant to Federal Rule of Civil Procedure 59

Defendants move for a new trial under Rule 59 on the grounds that the testimony of Plaintiff about his ability to work as a truck driver, or to work at all, and the testimony of Mr. Gazaleh were admitted in error. Defendants also contend that the deficiencies in the record relating to the time period from July 2011 to December 2011, and the lack of any direct expert

4

testimony that Plaintiff would no longer be able to work after December 2011, should preclude any award of lost wages after July 2011.

Rule 59 of the Federal Rules of Civil Procedure provides, in relevant part, that:

A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States....

*See* Fed. R. Civ. P. 59(a).

Reasons for a new trial have included circumstances where "the verdict is against the clear weight of the evidence; damages are excessive … [and when] substantial errors were made in the admission or rejection of evidence[.]"*Lyles v. Flagship Resort Development Corp.*, 371 F. Supp. 2d 597, 602 (D.N.J. 2005). "A district court has broad latitude to order a new trial for prejudicial errors of law." *Matos v. City of Camden*, 2010 WL 3199928, at *1 (D.N.J. Aug. 12, 2010) (citing *Klein v. Hollings*, 992 F.2d 1285, 1289–90 (3d Cir. 1993)). In evaluating a motion made on the basis of trial error, "the court must first determine whether an error was made in the course of the trial and then decide whether that error was so prejudicial that refusal to grant a new trial would be inconsistent with substantial justice." *Id.* (citing *Bhaya v. Westinghouse Elec. Corp.*, 709 F. Supp. 600, 601 (E.D. Pa., 1989), *aff'd* 922 F.2d 184 (3d Cir. 1990); *see also Wade v. Colaner*, 2010 WL 5479629, at *18 (D.N.J. Dec. 28, 2010).

However, "a court's discretion to order a new trial for a verdict contrary to the weight of the evidence is more limited." *Matos*, 2010 WL 3199928, at *1. Courts must engage in a "careful analysis of what inferences the jury could actually draw from the evidence presented at trial." *Nebel v. Avichal Enterp. Inc.*, 704 F. Supp. 570, 574 (D.N.J. 1989). A new trial should only be granted when "the great weight of the evidence cuts against the verdict and … a miscarriage of justice would result if the verdict were to stand." *Springer v. Henry*, 435 F.3d 268, 274 (3d Cir.

2006). In the absence of a finding that not granting a new trial would sanction a miscarriage of justice, the judge must respect the jury's verdict. *See Levine v. Vorhees Bd. Of Educ.*, No. 07-1614, 2010 WL 2735303, at \*3 (D.N.J. July 9, 2010) ("A trial court may not grant a new trial because it would have come to a different conclusion than that reached by the jury."); *see also Lyles*, 371 F. Supp. 2d at 601-02 (D.N.J. 2005) (citing *Roebuck v. Drexel University*, 852 F.2d 715, 736 (3d Cir. 1988)).

## A. Testimony of Arlington Ghee

Defendants argue that the Court erred in permitting Plaintiff to testify that he "couldn't drive a truck" or perform the physical labor associated with his previous job as a truck driver, nor could he do any other type of tractor-trailer work. *See* Tr. Vol. 1, 51:9-21; Vol. 2, 8:23 – 9:10. [6] Defendants contend that such testimony is prohibited by F.R.E. 701(c), which prohibits lay testimony when such testimony is based on "scientific, technical, or other specialized knowledge within the scope of F.R.E. 702."

As Plaintiff correctly points out, however, F.R.E. 701 does not mean that an expert is required whenever testimony is specialized or technical. A lay witness who possesses "particularized knowledge by virtue of her experience" may testify, even if the subject matter is specialized or technical, "because the testimony is based upon the layperson's personal

---

[6] Plaintiff also testified that he had not tried to do anything else because "he didn't have any idea what else [he could] do." Tr. Vol. 1, 57:24-25. He claimed that he was not "computer literate," nor could he work at a place "like a ShopRite or anything like that" that would require him to stand on his feet for extended periods. *Id.* at 57:24 – 58:7. Though not specifically discussed, to the extent that Defendants intended such testimony to be considered in their Motion, the Court declines to consider it because Defendants failed to object to this testimony at trial. *Waldorf v. Shuta*, 142 F.3d 601, 629 (3d Cir. 1998) ("[I]t is clear that a party who fails to object errors at trial waives the right to complain about them following trial.") (citing *Murray v. Fairbanks Morse*, 610 F.2d 149, 152 (3d Cir. 1979) (precluding counsel from seeking a new trial on the basis of issues to which he did not object at trial).

knowledge rather than on specialized knowledge within the scope of F.R.E. 702." *Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 81 (3d Cir. 2009). Here, Plaintiff testified that he had been a truck driver for over three decades. Tr. Vol. 2, 27:11-13 He also testified specifically about the duties he has had to perform as part of his job over those three decades. Tr. Vol. 2, 5:13-21; 13:24 – 15:19. Because of that extensive experience, he certainly learned what his job responsibilities were and would likely continue to be, and he could reasonably perceive based on that knowledge whether and to what extent his level of pain during various activities would affect his ability to perform those responsibilities. This was not an expert opinion. Plaintiff had "particularized knowledge" about the subjects of the testimony to which Defendants object.

Defendants further contend that Plaintiff's reliance on the language in *Donlin* is inappropriate because there, the Third Circuit had indeed found that plaintiff's testimony had "crossed the line into subject areas that demand expert testimony." However, in *Donlin*, plaintiff not only testified about facts within her personal knowledge, including her current and past earnings, but also "strayed beyond those easily verifiable facts" into areas requiring "forward-looking speculation for which she lacked the necessary training." *Donlin*, 581 F.3d at 83. This speculation included that she would receive a "3% annual pay-raise," despite the fact that her company had not provided an increase of more than 1.3% in the years immediately prior to trial. Plaintiff also misinterpreted a definition related to her retirement benefits and assumed a flat 5% per year of pension earnings based on nothing more than an example in her company's pension manual. *Id.* Finally, plaintiff performed a present-value discounting calculation, despite never having done so before, and also misapplied life expectancy charts. *Id.* According to Defendants here, Ghee's testimony similarly crossed the line into testimony requiring specialized medical and vocational knowledge. However, Defendants do not identify how his testimony crossed the

line in the way the *Donlin* plaintiff's testimony clearly did, nor do they point to any of Plaintiff's testimony that was inconsistent with the facts in the record. Finally, Defendants do not cite to any cases in which a plaintiff was successfully barred from testifying about his perceptions of how his limitations would affect his ability to perform duties which he had previously and extensively performed. Plaintiff's testimony about the impact of his pain and limitations on his ability to perform his duties as a truck driver fall squarely within his areas of "particularized knowledge." Thus, the Court finds no error in permitting Plaintiff's testimony about whether he believed he could continue to perform the duties associated with being a truck driver.

### B. Testimony of Paul Gazaleh

Defendants also argue that it was error to admit the testimony of Paul Gazaleh, who assumed, in making his economic loss calculations, that Plaintiff could not work at all as a result of the accident. Defendants contend that this assumption was provided by Plaintiff's counsel, but that it has no support in the record. At trial, I acknowledged that Plaintiff presented no express expert testimony as to the issue of Plaintiff's ability to work, but instead Plaintiff built the foundation for Mr. Gazaleh's testimony on the testimony of medical experts as to the significant and permanent limitations faced by Plaintiff, as well as Plaintiff's own perception of his ability to work. Tr. Vol. 3, 70:18 – 74:1. I found that such a combination provided a sufficient foundation for Mr. Gazaleh's testimony. *Id.* I maintain that position now, as well.

There is no dispute that Plaintiff did not present a vocational expert who opined directly about Plaintiff's ability to work in the future. However, there was medical expert testimony indicating the numerous and significant limitations Plaintiff faced that would clearly impact his ability to work. Dr. Steven Berkowitz testified that Plaintiff "can't stand [or] sit" for more than an hour at a time without being in pain. Tr. Vol. 3, 41:2-20.   Indeed, Dr. Berkowitz testified that

the only thing Plaintiff could do for more than an hour at a time is lie down. *Id.* at 41:15-16. Dr. Berkowitz also testified that Plaintiff's condition is permanent and his prognosis is "extremely guarded." *Id.* at 40:1, 42:4. Dr. John Ratliff also testified via a videotaped deposition as to the permanency of Plaintiff's injuries. Furthermore, Plaintiff testified about his own perception of how his limitations would affect his ability to continue to perform the duties of a truck driver. Indeed, Defendants do not appear to dispute that Plaintiff's physical limitations would prevent him from being a truck driver. Plaintiff also testified that he had not tried to do anything else because "he didn't have any idea what else [he could] do." Tr. Vol. 1, 57:24-25. He claimed that he was not "computer literate," nor could he work at a place "like a ShopRite or anything like that" that would require him to stand on his feet for extended periods. *Id.* at 57:24 – 58:7.

Plaintiff's testimony was further bolstered by the testimony of his son, Arlington Davis, and his sister-in-law, Trina Davis. Arlington Davis testified that, after the accident, his father had developed a limp. Tr. Vol. 2A, 11:18-24. Mr. Davis also testified that Plaintiff "couldn't lift anything" and that, after the accident, they no longer played basketball or football together. *Id.* 12:9-14, 16:18-20. He testified that he saw no improvement in Plaintiff after the surgery in 2010. *Id.* 13:8-10. Both Mr. Davis and Ms. Trina Davis testified that Plaintiff could not do anything physical to help his terminally ill wife in the months prior to her death, such as helping her up and down the stairs. Tr. Vol. 2A, 13:22-25; Tr. Vol. 2, 106:25 – 107:2. Finally, both Mr. Davis and Ms. Davis testified that prior to the accident, Plaintiff would spend hours in front of the grill cooking for his family at weekend family barbecues, but after the accident, he would no longer show up regularly, and when he did, he would only grill for a few minutes at a time. Tr. Vol. 2, 99:4 – 100:4; Tr. Vol. 2A, 15:20 – 16:15. While the observations of Mr. Davis and Ms. Davis were not specifically about Plaintiff's ability to work, and would be insufficient by themselves to

support an assumption about Plaintiff's ability to work, they helped lend credibility to Plaintiff's own testimony about what he could do, and to the testimony of Dr. Ratliff and Dr. Berkowitz about Plaintiff's injuries and limitations.

The combination of the aforementioned expert medical and lay testimony was sufficient to allow for the inference that Plaintiff was unable to do any work, and thus also sufficient for Mr. Gazaleh to make an assumption about Plaintiff's ability to work. Defendants take issue with the circumstantial nature of the testimony, suggesting that the absence of direct testimony about Plaintiff's inability to work should bar any such inference. However, it is not necessary for a party to provide direct evidence of every inference he seeks to prove. As I instructed the jury, "[t]here are two types of evidence which are generally presented during the trial: direct evidence and circumstantial evidence." Tr. Vol. 5, 11:23-25. Here, the circumstantial evidence was sufficient to permit inferences and assumptions about Plaintiff's ability to work. Though the conclusion that Plaintiff is unable to work is not inescapable, it does not need to be. There simply needs to be a sufficient foundation from which that assumption can be drawn, and such a foundation was present here.

Furthermore, Defendants had the opportunity to cross-examine Mr. Gazaleh and Plaintiff's other witnesses whose testimony supported Mr. Gazaleh's key assumption, and also to present their own witnesses. While Defendants produced a vocational expert, Ms. Barach, who testified that Plaintiff could indeed work, that does not mean that such a conclusion is the only one that could be reached, nor does a jury have to accept that testimony. As noted, while Ms. Barach accounted for Plaintiff's limitations generally, she did not take into account the specifics of those limitations, such as the one hour limit on Plaintiff's ability to sit or stand, as testified to by Dr. Berkowitz. Tr. Vol. 4, 24:7-10, 38:7-11. While Ms. Barach claimed that such information

would not have affected her conclusion, Tr. Vol. 4, 22:23 – 23:11, that information coupled with her lack of awareness of that information leaves the door open for different assumptions to be drawn by the jury, including discounting or rejecting her testimony.

I also carefully instructed the jury, immediately prior to Mr. Gazaleh's testimony, that the jury may "disregard all or any portion of the expert's conclusion" if the jury found it to be "based on assumptions or factual conclusions that [it] consider[ed] to be mistaken or unwarranted." I pointed out that this additional instruction was being given in the context of Mr. Gazaleh's assumption that Plaintiff would not work in the future. Tr. Vol. 3, 84:20 – 86:20. Specifically, I instructed:

> Let me speak to the jury.
>
> Mr. Gazaleh will be accepted as an expert with a CPA, and he is going to provide some economic analyses. I gave you some instructions yesterday on how to receive expert testimony; I mentioned it again this morning. I would like to expand upon that with regard to the testimony that you will hear, however.
>
> First of all, I want to remind you that the value of the testimony of an expert witness depends on the learning and skills of the expert, and it varies with the circumstances of the case.
>
> You must consider an expert's opinion received and give it such weight as you think it deserves. You should consider the expert's level of expertise and knowledge and the reasons that he has assigned for any opinions that he gives.
>
> You should accept his testimony if you find his qualifications sufficient and his reasons satisfactory. If, however, an expert's opinion is based on assumptions or factual conclusions that you consider to be mistaken or unwarranted, you may disregard all or any portion of the expert's testimony like any other testimony and give it as much weight and credit as you deem it entitled to receive, viewed in connection with all of the evidence in this case.
>
> And I say this in connection with the following: Mr. Gazaleh is going to testify about the losses, financial economic losses that Mr. Ghee has suffered based upon him not working. That includes not having worked up to this point, and he is going to give opinions about him not working in the future. Those opinions are based upon Mr. Ghee never working in any capacity.

11

> Ultimately, it will be for you to decide whether that assumption upon which he bases his numbers is one that you accept based on the evidence that you have heard or will hear in this case because, as I've explained to you, any expert opinion has to be evaluated based on the assumptions or factual conclusions taken by an expert. Mr. Gazaleh, as you just heard, is making no conclusions at all as to whether Mr. Ghee can work or not.
>
> …
>
> He has not independently made a determination. He is basically the number cruncher. You all understand that.

*Id.*

Moreover, the jury awarded Plaintiff $127,997 less in future lost wages than the amount Mr. Gazaleh opined was the entire loss. This, at the very least, indicates that the jury did not credit Mr. Gazaleh's testimony in full and evaluated all of the evidence.

In support of their argument that Mr. Gazaleh's testimony should have been excluded, Defendants rely principally upon *Benjamin v. Peter's Farm Condominium Owners Ass'n*, 820 F.2d 640 (3d Cir. 1987). However, a closer look at the facts of *Benjamin* illuminates the significant differences between *Benjamin* and the instant case. *Benjamin* involved a slip and fall by plaintiff on premises owned by defendant. At trial, plaintiff introduced the testimony of an expert certified public accountant who concluded that plaintiff's lost future earnings would total $500,000. To calculate plaintiff's future earnings loss, the expert, *inter alia*, "assigned a $10,000.00 yearly value to plaintiff's post-injury part-time work capacity and increased this figure by three percent for 27.5 years." The Third Circuit took issue with how the expert came to the $10,000 figure for future part-time work. The expert explained that he asked plaintiff " 'how much did he feel he would earn from his endeavors.' " and that plaintiff " 'felt that he was going to work part-time and … that $10,000 was reasonable." *Id.* at 641. While the records provided to the expert "didn't support the $10,000" figure, nonetheless, the expert still used that figure in his calculation. *Id.* The Third Circuit wrote that "[r]eliance on [plaintiff]'s personal belief as to his

capabilities was improper because [plaintiff]'s belief was merely speculative. The figure derived

from that reliance was thus without proper foundation and insufficient for a jury to properly

assess [plaintiff]'s damages." *Id.* at 643. From this, it is clear that it was the complete

arbitrariness of the $10,000 figure used in the expert's calculation – one that was actually

contradicted by the records provided to the expert – that required exclusion of the expert's

testimony.

Other cases precluding the testimony of an economic expert projecting future lost

earnings suffer from a similar level of arbitrariness and contradiction not found here. In *Gumbs*

*v. Int'l Harvester, Inc.*, the court held that the testimony of an economic expert as to future lost

earnings should not be permitted where the expert "calculated the plaintiff's future earnings loss

based on plaintiff's remaining life expectancy of eighteen years rather than plaintiff's remaining

work-life expectancy of seven and one-half years," and where the expert assumed that "but for

his accident, the plaintiff would in the future earn twice his annual income for the four years

preceding the accident[.]" 718 F.2d 88, 98 (3d Cir. 1983). Similarly, in *Elcock*, the court found

that the district court had erroneously admitted the testimony of an expert who based his

economic damages model on an "arbitrary 100% disability figure[,]" even though plaintiff had

continued to work and earn money after her injury and such a figure was contradicted by the

medical report provided to the expert which found plaintiff to be 50 to 75% disabled, and also

relied upon a life-expectancy which was contradicted by plaintiff's own expert. 233 F.3d at 756.

In sum, each of these cases included facts, not simply opinions, that actually contradicted the

factual assumptions upon which the economic expert based his testimony.

In contrast here, there were "sufficient factual predicates" in the record supporting Mr.

Gazaleh's assumption. The evidence indicated that Plaintiff's injuries were permanent, that

13

Plaintiff could not sit or stand for more than an hour at a time without experiencing pain, and that the only thing Plaintiff could comfortably do for a long period of time is lie down, *and* that Plaintiff believed, based upon his 30 years as a truck driver, that his limitations would prevent him from returning to his former career. Because an individual's limitations are intrinsically intertwined with what he is capable of doing, the evidence presented was sufficient to allow Mr. Gazaleh to testify about Plaintiff's lost earnings on the assumption that Plaintiff could no longer be a truck driver. Similarly, those limitations also supported at least the presentation of testimony about Plaintiff not performing any work in the future.

Thus, the Court finds that it was not error to admit the testimony of Mr. Gazaleh.

**C. Lost Wages from July 2011 to December 2011**

I now turn to the specific question of whether the jury's award of lost wages for July 2011 to December 2011 was against the weight of the evidence.

Dr. Ratliff, who operated on Plaintiff and treated him through July 2011, testified via videotape that Plaintiff's injuries were permanent. Dr. Berkowitz, who saw Plaintiff in December 2011, testified to the same, and also testified that Plaintiff could not sit or stand for more than an hour without pain. Furthermore, as discussed, the testimony of Dr. Ratliff and Dr. Berkowitz was sufficient to permit the jury to infer that Plaintiff could no longer work. Dr. Ratliff's testimony as to the permanency of Plaintiff's injuries as of July 2011 and Dr. Berkowitz's testimony as to both the permanency of Plaintiff's injuries and Plaintiff's limitations related thereto as of December 2011 was sufficient to allow the jury to infer that Plaintiff's condition had stayed the same between July 2011 and December 2011. Thus, since there is a justifiable inference that Plaintiff's condition prevented him from working, and because this same condition persisted between July 2011 and December 2011, then it follows that Plaintiff could not work between

July 2011 and December 2011. While Defendants' vocational expert opined otherwise, as discussed *supra*, p. 11, this opinion testimony could have been disbelieved by the jury. Certainly, standing alone, it is not so unimpeachable as to make any contrary verdict a miscarriage of justice. Instead, it was the jury's responsibility to consider *all* of the evidence presented, which I instructed it to do. Thus, the portion of the jury's award attributable to the time period from July 2011 to December 2011 cannot be said to be against the weight of the evidence.

## II. Defendants' Renewed Motion for Judgment as a Matter of Law Pursuant to Federal Rule of Procedure 50(b)

The Court next turns to Defendants' renewed Motion for a Judgment as a Matter of Law, and the question of whether the evidence presented to the jury was sufficient to support its award for lost wages.

Rule 50(a) provides that "[i]f a party has been fully heard on an issue during a jury trial," a court may grant a motion for judgment as a matter of law where the "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the [nonmoving] party ..." *See* Fed. R. Civ. P. 50(a). If the motion made under Rule 50(a) is denied by the court, the party may file a renewed motion for judgment as a matter of law under Rule 50(b) no later than 28 days after judgment is entered. Fed. R. Civ. P. 50(b). Rule 50(b) provides that, in deciding a 50(b) motion, the court may: "(1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law." *See* Fed. R. Civ. P. 50(b).

The standard for deciding the renewed motion is the same as the standard for deciding the motion made at trial. *Neville Chem. Co. v. Union Carbide*, 422 F.2d 1205, 1210 n.5 (3d Cir. 1970). Judgment as a matter of law under Rule 50 "should only be granted if the record is

critically deficient of that minimum quantity of evidence from which a jury might reasonably

afford relief." *Levine,* 2010 WL 2735303, at *1 (quoting *Raiczyk v. Ocean County Veterinary*

*Hospital*, 377 F.3d 266, 269 (3d Cir. 2004) (internal quotation marks omitted) (citing another

source)). "The question is not whether there is literally no evidence supporting the unsuccessful

party, but whether there is evidence upon which a reasonable jury could properly have found its

verdict." *Id.* (quoting *Johnson v. Campbell*, 332 F.3d 199, 204 (3d Cir. 2003)) (internal

quotations marks omitted) (citing another source)). When deciding a motion for judgment as a

matter of law, courts must look at the evidence and justifiable inferences most favorable to the

prevailing party. *Bhaya v. Westinghouse Elec. Corp.*, 832 F.2d 258, 258–59 (3d Cir. 1987), *cert.*

*denied*, 488 U.S. 1004 (1989); *see also Abrams v. Lightolier*, 841 F. Supp. 584, 588 (D.N.J.

1994); *Rotondo v. Keene Corp.*, 956 F.2d 436 (3d Cir. 1992).

Viewing the evidence and justifiable inferences most favorable to Plaintiff, there was

clearly evidence upon which a reasonable jury could have based its verdict. Plaintiff produced

the testimony of two doctors who testified that Plaintiff suffered from permanent and serious

limitations. One of the doctors saw Plaintiff in July 2011 and the other in December 2011.

Though there was no direct evidence of Plaintiff's health in the intervening five months, the

testimony was sufficient to support a finding that Plaintiff's condition stayed the same over those

five months.

Furthermore, as discussed, in addition to the testimony about Plaintiff's injuries by the

two doctors, which supported an inference that Plaintiff would be unable to work in the future,

Plaintiff testified about his inability to work in the future, and produced the testimony of his son

and his sister-in-law, who both corroborated the testimony about Plaintiff's limitations by giving

real world examples. Finally, Plaintiff's economic expert, Mr. Gazaleh, appropriately calculated

Plaintiff's past and future lost earnings, thus providing figures upon which the jury could rely in reaching its verdict. Thus, there was clearly enough evidence in the record to support the jury's award for past and future lost wages. Indeed, it appears that the jury carefully considered all of the evidence since it did not fully accept Mr. Gazaleh's opinion regarding Plaintiff's future wage loss.

### III. Motion for Remittitur

Finally, Defendants request remittitur of the portion of the jury's award for lost wages from July 2011 and beyond, on the ground that such an award was unsupported and excessive.

"[T]he remittitur is well established as a device employed when the trial judge finds that a decision of the jury is clearly unsupported and/or excessive." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 715-16 (3d. Cir. 2010) (quoting *Spence v. Bd. of Educ. of Christina Sch. Dist.*, 806 F.2d 1198, 1201 (3d Cir. 1986)); *see also Keenan v. City of Philadelphia*, 983 F.2d 459, 469 (3d Cir. 1992) ("We may grant a new trial or remittitur only if the verdict awarded by the district court is so grossly excessive as to shock the judicial conscience.") (citation omitted); *Gumbs v. Pueblo Intern., Inc.*, 823 F.2d 768, 771–773 (3d. Cir. 1987) ("[O]ur review of this question is severely limited ... [While] [a] jury has very broad discretion in measuring damages[,] ... a jury may not ... treat an injury as though it were a winning lottery ticket. There must be a rational relationship between the specific injury sustained and the amount awarded.")

As the Third Circuit has explained, while the term 'remittitur' is often used by courts "to refer to any reduction in a damages award, including one which is imposed to satisfy constitutional due process concerns, the term is actually far more specific." *Cortez*, 617 F.3d at 716. If a court determines that a verdict is constitutionally excessive, it has no choice but to reduce the verdict "so that it conforms to the requirements of the due process clause." *Id.*

(quoting *Johansen v. Combustion Engineering, Inc.*, 170 F.3d 1320, 1331 (11th Cir. 1999))

(citation omitted). In contrast, a court imposes remittitur when it believes the jury's award is

unreasonable in light of the facts that were before them. *Cortez*, 617 F.3d at 716 The Third

Circuit has advised, however, that

> the remedies available to a court when reducing a jury award based upon due
> process concerns are not necessarily the same as those available when a court
> exercises its discretion because it believes the amount of the award is inconsistent
> with the evidence in a case. The latter is conditional, and the court must offer a
> new trial as an alternative to a reduction in the award in to avoid depriving the
> plaintiff of his/her Seventh Amendment right to a jury trial.

*Id.* (citing *Hetzel v. Prince William Cnty.*, 523 U.S. 208, 211 (1998) (per curiam)). When,

however, a Court reduces a damages award that it finds constitutionally excessive, the award is

reduced as a matter of law without interference with the plaintiff's Seventh Amendment right to

have the jury determine the findings of fact. *Cortez*, 617 F.3d at 716.

For the same reasons as those already discussed, the Court will deny Defendants' Motion

for Remittitur. The verdict was not against the weight of the evidence. As discussed, the

testimony of Dr. Ratliff and Dr. Berkowitz, as well as the calculations done by Mr. Gazaleh,

provided sufficient support for the jury's verdict, and this evidence was not so overwhelmingly

contradicted by Defendants' evidence as to make the jury's verdict against the weight of the

evidence. Thus, I do not find the jury's award to be constitutionally excessive or against the

weight of the evidence, and therefore I deny Plaintiff's Motion for Remittitur.

## CONCLUSION

In light of the foregoing, Defendants' renewed Motion for a Judgment as a Matter of

Law, Motion for a New Trial, and Motion for Remittitur are hereby denied. An appropriate

Order shall issue.

_____/s/ Freda L. Wolfson_____
The Honorable Freda L. Wolfson
United States District Judge